UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM A. VERTREES,

    Plaintiff,

v.                                                Case No. 8:10-cv-2164-T-24 EAJ

AMERICAN VULKAN CORP.,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 30). Plaintiff opposes the motion. (Doc. No. 48). As explained below, the motion is granted.[1]

## I.  Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the

---

[1] Defendant also moved to strike certain portions of Plaintiff's declaration in opposition to Defendant's summary judgment motion. (Doc. No. 50). The Court, however, did not consider the motion to strike, and instead, the Court ruled on Defendant's motion for summary judgment based on all of the filings before the Court.

non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Plaintiff William Vertrees worked for Defendant American Vulkan Corp. ("AVC") from 2001 until he was terminated on April 16, 2009.  Plaintiff was purportedly terminated for violating Defendant's no reading at work rule; however, he contends that he was really terminated because (1) Defendant was targeting older employees for layoffs, and (2) he was retaliated against for reporting Defendant's age discrimination.  Plaintiff was 64 years old at the time of his termination.

### The Machine Shop

Defendant manufactures and sells parts for machinery.  (Lehner decl. ¶ 2).  Plaintiff worked in Defendant's Machine Shop as a machinist.  There were six other machinists in the Machine Shop—Jerry Jones, Robert Allen, Bill Bova, Tony Horwath, Bud Hildebrand, and Al Pecina.  (Pla. depo. p. 186).  The machinists reported to Thomas Lehner, Defendant's Vice President of Operations.

### The No Reading at Work Rule

Defendant had a cleaning company that cleaned its facilities, including the Machine Shop.  (Lehner decl. ¶ 19).  In 2008, the cleaning company complained about the state of the Machine Shop's bathroom, as it had newspapers and magazines strewn around.  (Lehner decl. p. 19).  Thereafter, Lehner posted a sign on the bathroom door for one day that stated "no reading" or "no reading in the bathroom."  (Pla. depo. p. 104, 105, 203-04; Lehner decl. ¶ 21).  Later, either at the

end of 2008 or in early 2009, Lehner had a meeting with the Machine Shop employees in which he told them they could not read at work, except on breaks. (Pla. depo. p. 99-100, 105; Lehner decl. ¶ 20). Plaintiff was given three breaks during the day—a ten-minute morning break at 9:00 a.m., a one-hour lunch break at 11:00 a.m., and a ten-minute break at 2:00 p.m.[2] (Pla. depo. p. 69-70). In February of 2009, Lehner was told that some people had been reading at work, and Lehner warned Plaintiff not to let him catch Plaintiff reading. (Pla. depo. p. 99-100, 107, 202-03, 212).

## The Decision to Lay Off Employees

Sometime at the end of 2008, Plaintiff approached Lehner and Thomas Falz, the President of the company, to discuss with them his plan that within a year or so, he wanted to semi-retire and begin working part-time. (Pla. depo, p. 49-50, 53). Both Lehner and Falz were amenable to Plaintiff's plan, and they asked that he continue working full-time for a while, because the company was busy. (Pla. depo. p. 49). Plaintiff agreed and made it clear that he planned to work until he turned 66—the age at which he would receive full social security benefits. (Pla. depo. p. 49-50).

By March of 2009, Plaintiff recognized that business was slowing down for Defendant. (Pla. depo, p. 45). On March 17, 2009, Lehner and Falz began meeting with employees to discover whether any of the employees planned to leave the company; this was done in an attempt to avoid having to lay off employees. (Doc. No. 48, p. 5). On that day, Lehner met with the following six Machine Shop employees: Jerry Jones (who was approximately 67 years old at

---

[2]The ten-minute breaks were signaled by a buzzer that sounded at the beginning and end of each break. (Allen depo. p. 8-9; Lehner decl. ¶ 20).

the time), Al Pecina (who was approximately 41 years old at the time), Tony Horwath (who was approximately 47 years old at the time), Bud Hildebrand (who was approximately 50 years old at the time), Robert Allen (who was approximately 54 years old at the time), and Plaintiff (who was 64 years old at the time). (Lehner decl. ¶ 7-12; Falz decl. ¶ 8-10).

When Lehner approached Plaintiff on March 17, 2009 and asked to speak with him in Lehner's office, Lehner stated that, "we're talking to the elderly first." (Pla. depo, p. 45, 48). When Plaintiff and Lehner arrived at Lehner's office, Falz was there waiting for them. (Pla. depo. 49). During their meeting, they discussed that business was slowing down, so the company was trying to find out what Plaintiff's intentions were on retirement. (Pla. depo. p. 57). Plaintiff responded that he wanted to stay working until at least June of 2010 (when he would turn 66). (Pla. depo. p. 57). At some point during this meeting, Falz commented that the mandatory retirement age in Germany is 65.[3] (Pla. depo. p. 62).

Based on his discussion with Lehner and Falz, Plaintiff had the impression that employees would be laid off. (Pla. depo. p. 59). While Plaintiff concedes that no one stated to him that older employees would be selected first for any layoffs, Plaintiff still believed that Lehner and Falz were targeting the older people for the layoffs based on Lehner's statement that they were talking to the elderly first.[4] (Pla. depo. 59, 71, 246).

---

[3]The relevance of Germany to their conversation is unclear, although Defendant's head office is in Germany. (Falz depo. p. 6).

[4]Plaintiff's statement of facts includes allegations that two employees told him that Lehner and Falz made discriminatory statements to them. (Doc. No. 48, p. 5, 9). However, the only evidence of those statements is Plaintiff's deposition testimony, and as such, the alleged statements are hearsay and cannot be considered by this Court. Furthermore, one of the two employees, Jerry Jones, submitted a declaration in which he disputes that he ever told Plaintiff that Lehner and Falz made discriminatory statements to him. (Jones decl. ¶ 15).

4

At the end of the day on March 17, 2009, Lehner got the Machine Shop employees together and announced that there would be some layoffs coming. (Pla. depo. p. 93-94). Lehner asked employees to inform management if they had any intentions of leaving the company in the near future or had any desire to work part-time. (Pla. depo. p. 95, 190).

About two weeks after the March 17, 2009 meeting, Plaintiff saw Barbara Green, Defendant's Director of Human Resources, and he told her about his meeting with Lehner and Falz. (Pla. depo. p. 72-73). Plaintiff reported to her the comments Lehner and Falz made that he felt were inappropriate (i.e., that they were talking to the elderly first, and that the mandatory retirement age in Germany is 65).[5]

Thereafter, Green informed Falz and Lehner that Plaintiff had reported to her that he believed that their comments were inappropriate. (Green decl. ¶ 8, 9). On April 16, 2009, approximately two weeks after Plaintiff's discussion with Green, Plaintiff was terminated. (Pla. depo. p. 90, 97).

**Plaintiff's Termination**

On April 16, 2009, Plaintiff left his workstation around 9:45 a.m. to go to the bathroom, and he took with him a newspaper tucked in his back pocket under his shirt. (Pla. depo. p. 97, 99, 102, 195, 215). About six to seven minutes later, Lehner entered the bathroom, flipped off the light switch, asked Plaintiff if he needed the light on to read, and then asked Plaintiff to come to his office when he was finished. (Pla. depo. p. 112, 195, 201). When Plaintiff went to Lehner's office, Lehner asked if he had been reading in the bathroom, and eventually Plaintiff

---

[5]Plaintiff's complaint was the first, and only, complaint to Defendant that Lehner had ever discriminated against anyone due to their age. (Falz decl. ¶ 15).

admitted to it. (Pla. depo. p. 114-15, 117). In response, Lehner told Plaintiff that he would have to speak with management about the situation.[6] (Pla. depo. p. 115, 122).

About 45 minutes later, Lehner spoke to Plaintiff again. (Pla. depo. p. 122). Lehner told Plaintiff that he had spoken with management about the situation and that it was decided that Plaintiff would be terminated. (Pla. depo. p. 123). Plaintiff asked Lehner to go back to management and to please reconsider, and Lehner responded "No. That's my decision." (Pla. depo. p. 123-24).

When Plaintiff went back to his workstation to collect his belongings, he had a few Mechanics Illustrated magazines there, as well as approximately thirty-six Playboy magazines. (Pla. depo. p. 66, 276-77).

### Other Machine Shop Employees

After Plaintiff was terminated, and in response to the slow down in business, Defendant moved two machinists, Bill Bova and Bud Hildebrand, from the Machine Shop to Outside Maintenance. (Pla. depo. p. 182). The move from the Machine Shop to Outside Maintenance is not considered an advancement or a positive move. (Pla. depo. p. 183). Bova was fifteen years younger than Plaintiff, and Bova also had his pay cut by $3 per hour at the time of the move. (Pla. depo. p. 181-83). Hildebrand was about ten years younger than Plaintiff. (Pla. depo. p.

---

[6]The people that Lehner spoke with were Falz, Green, Wayne Dowers (Vice President of Sales), and Eric Mowrer (Vice President of Engineering). (Green decl. ¶ 15, 16). The Court notes that Plaintiff contends that Lehner lied to Falz during this meeting by telling him that Plaintiff had violated the rule "multiple" times. However, the record shows that Plaintiff acknowledges that prior to Lehner catching Plaintiff reading in the bathroom (which led to his termination), Lehner had been told by Allen that Plaintiff had been reading in the work area. (Pla. depo. p. 232-234). Thus, there was a basis for Lehner stating to Falz that Plaintiff had violated the no reading at work rule multiple times.

184). At some point, Hildebrand was reassigned back to the Machine Shop.[7] (Allen depo. p. 35).

Two Machine Shop employees who were older than Plaintiff were not reassigned. Jerry Jones, who is two years older than Plaintiff, and Gene Williams, who was more than ten years older than Plaintiff, remained in the Machine Shop after Plaintiff's termination. (Pla. depo. p. 162, 184).

## This Lawsuit

On September 28, 2010, Plaintiff filed suit against Defendant. Currently, he has the following claims pending—age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA").

## III. Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's age discrimination and retaliation claims. Accordingly, the Court will analyze whether summary judgment is appropriate for each claim.[8]

### A. Age Discrimination

Plaintiff claims that Defendant violated the ADEA by firing him because of his age.

---

[7] It appears that Hildebrand's reassignment occurred after 2009, because Lehner stated in a declaration that "[f]or the remainder of 2009, Bova and Hildebrand painted, installed new lights, installed new racking system [sic], did paving, and landscaping." (Lehner decl. ¶ 18). In Lehner's deposition, he appears to refer to Hildebrand being in the maintenance department for a year. (Lehner depo. p. 20-21).

[8] Claims brought under the FCRA are analyzed under the same framework as claims brought under the ADEA. See Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 871 (11th Cir. 2011)(citation omitted). As such, because the Court finds that Defendant is entitled to summary judgment on Plaintiff's ADEA claims, the Court finds that Defendant is also entitled to summary judgment on Plaintiff's FCRA claims.

Defendant argues that it is entitled to summary judgment on this claim.

"The ADEA prohibits employers from discriminating against employees who are at least 40 years old on the basis of age." Gortemoller v. International Furniture Marketing, Inc., 434 Fed. Appx. 861, 862 (11th Cir. 2011)(citing 29 U.S.C. §§ 623(a)(1), 631 (a)). In order to succeed on an ADEA claim, the plaintiff must prove through direct or circumstantial evidence that age was the "but for" cause of the adverse employment action. See id. (citations omitted).

Plaintiff has not submitted any direct evidence of age discrimination. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)(citation omitted). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age constitute direct evidence of age discrimination." Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 871 (11th Cir. 2011)(quotation marks, alterations, and citation omitted). Therefore, "remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard, 161 F.3d at 1330. Furthermore, "[e]vidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence," but such evidence may constitute circumstantial evidence. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999)(quotation marks and citation omitted); Standard, 161 F.3d at 1331.

In this case, the comments at issue—that Lehner and Falz were talking to the elderly first, and that the mandatory retirement age in Germany is 65—are not direct evidence, because those comments, at best, only *suggest* discrimination. Additionally, those comments are subject to more than one interpretation. Furthermore, those comments were not made at the time of

Plaintiff's termination, and as such, the comments do not directly show that Plaintiff's age was the reason for his termination. However, while those comments are not direct evidence of discrimination, they can be considered as circumstantial evidence of discrimination.

In evaluating whether there is sufficient circumstantial evidence of age discrimination, courts use the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gortemoller, 434 Fed. Appx. at 862. Under this framework:

> [A] plaintiff must first establish a *prima facie* case of age discrimination by showing that: (1) he was a member of the protected group of persons between the ages of 40 and 70; (2) he was subject to adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a younger individual. Alternatively, even if a plaintiff is not replaced by a . . . [younger individual], he may still satisfy the last prong of the *prima facie* case requirement by identifying similarly situated [younger] comparators . . . who were treated more favorably.

Horn v. United Parcel Services, Inc., 433 Fed. Appx. 788, 792 (11th Cir. 2011)(citations omitted); see also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). As explained below, Plaintiff cannot show that a genuine issue of material fact exists as to the fourth element, and as such, he fails to establish a prima facie claim of age discrimination.

As previously stated, one of the ways for establishing the fourth element of a prima facie claim of age is discrimination is by showing that a younger, similarly situated comparator was treated more favorably than Plaintiff. However, Plaintiff has not made such a showing. The only person that Plaintiff specifically identifies as violating the no reading at work rule is Robert Allen. (Pla. depo. p. 103-04). Plaintiff contends that Allen admitted to him that he [Allen] had read in the bathroom in the past. (Pla. depo. p. 103). Yet, Plaintiff offers no evidence that Allen was ever *caught* reading, and as such, Plaintiff cannot show that Allen was treated more favorably.

9

Furthermore, as previously stated, the other way of establishing the fourth element of a prima facie claim of age discrimination is by showing that Plaintiff was replaced by a younger individual. Plaintiff contends that he was replaced by Bud Hildebrand, who is younger than Plaintiff. To support this contention, Plaintiff points to Allen's deposition testimony, in which the following exchange occurred:

> Q: Have you replaced [Plaintiff's] position?
> A: Yes sir.
> Q: Did you hire somebody?
> A: Well, we had one of our machinists . . . who went with a sister company come back to help us.
> Q: Who is that?
> A: Bud Hildebrand

(Allen depo. p. 35). There were no further questions about when, specifically, Hildebrand returned as a machinist.

However, there is evidence in the record that: (1) Hildebrand was a machinist at the same time Plaintiff was employed with Defendant as a machinist, (2) after Plaintiff was fired, Hildebrand was transferred from the Machine Shop to Outside Maintenance, (3) Hildebrand worked in Outside Maintenance during 2009, and (4) Hildebrand was reassigned as a machinist at some point later. (Pla. depo. p. 186; Lehner decl. ¶ 18; Lehner depo. p. 20-21; Allen depo. p. 35). Thus, Plaintiff was not *immediately* replaced by Hildebrand, and as such, the Court is not persuaded that Plaintiff has shown that he met the fourth element—that he was replaced by a younger employee. See Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992)(finding that the defendant's hiring Boehm nine months after the plaintiff's termination, once business had picked up, was not evidence that the plaintiff had been replaced by Boehm); Sandhu v. Napolitano, 2011 WL 5507405, at *4 (Nov. 10, 2011)(stating that the two year lapse in time between the plaintiff's

10

termination and the defendant's hiring did not support an inference that the plaintiff had been replaced); see also Howard v. Roadway Express, Inc., 726 F.2d 1529, 1535 (11th Cir. 1984)(stating that the time lapse of eleven months between the rejection of the plaintiff's employment application and the defendant filling the position for which the plaintiff applied "significantly diminish[ed] the reliability of the subsequent hiring as an indicator of [the defendant's discriminatory] intent at the time it rejected [the plaintiff's] application"); Israel v. Sonic-Montgomery FLM, Inc., 231 F. Supp.2d 1156, 1162 (M.D. Ala. 2002)(stating that the year time lapse between the plaintiff's termination and the hiring of a younger replacement made the defendant's hiring of the younger replacement "less indicative that age was a consideration").

However, even if Plaintiff had established a prima facie claim of age discrimination, his claim would still ultimately fail. Once a plaintiff establishes a prima facie claim, the defendant is given the opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action. See Gortemoller, 434 Fed. Appx. at 862 (citation omitted). Defendant has proffered such a reason—Plaintiff was fired for violating the no reading at work rule. As such, in order for Plaintiff's age discrimination claim to withstand summary judgment, Plaintiff must submit evidence that shows that Defendant's proffered reason is mere pretext for its discriminatory action. See id. (citation omitted). In analyzing the issue of pretext:

> [T]he Court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence. This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff.

Toussaint v. Public Health Trust, 277 F. Supp.2d 1290, 1297 (S.D. Fla. 2003)(quotation marks

and citations omitted). Thus, "[u]ltimately, an employer's legitimate, nondiscriminatory reason is not a pretext for discrimination unless it is shown that the reason was false and that discrimination was the real reason." Brown v. Northside Hospital, 311 Fed. Appx. 217, 223 (11th Cir. 2009)(citation omitted).

As previously stated, Defendant contends that Plaintiff was fired for violating the no reading at work rule, which prohibits employees from reading at work unless they are on a break. Plaintiff was given three scheduled breaks during the day—a lunch break and two ten-minute breaks that were signaled by a buzzer. With regard to reading in the bathroom, Falz has stated that employees can take bathroom breaks at any time, but they can only read in the bathroom during their lunch hour and during their two ten-minute breaks. (Falz depo. p. 16-17). Otherwise, employees are not allowed to read in the bathroom. (Falz depo. p. 17). Falz explained that the rationale for this rule is that reading in the bathroom extends the time spent in the bathroom, and the company does not want to extend the time the employees spend in the bathroom when they should be working. (Falz depo. p. 17).

In order to preclude summary judgment on this claim, Plaintiff must point to evidence that shows that this legitimate, non-discriminatory reason is pretextual. Plaintiff cannot raise a genuine issue of material fact "by simply quarreling with the wisdom of [Defendant's] reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). As the Eleventh Circuit has explained:

> While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason does not have to be a reason that the judge or jurors would act on or approve. . . . [This is true even if the defendant's] decision[] might seem unfair or even incredible to outside

12

observers.

Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)(internal quotation marks and citations omitted). Thus, although being fired for reading in the bathroom may seem to be a harsh punishment, the reasonableness of Defendant's disciplinary policies are not a consideration. See Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000). As further explained by the Eleventh Circuit:

> [A] defendant may terminate an employee for a good or bad reason without violating federal law. [Courts] are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)(internal citation omitted).

Plaintiff makes several attempts to show that Defendant's proffered reason for his termination is pretextual. However, none of Plaintiff's arguments have any merit.

First, Plaintiff argues that there is a genuine issue of fact regarding what the no reading at work rule actually prohibited. While Plaintiff argues that Allen, Lehner, and Falz's deposition testimony all conflict with each other, as well as their deposition testimony conflicting with their sworn declarations, this argument has no merit. Allen, Lehner, and Falz's deposition and declaration testimony all show that the no reading at work rule prohibited reading at work, with two exceptions: (1) employees could read work-related materials at any time; and (2) employees could read at work during their lunch hour and their two *scheduled* breaks. (Allen decl. ¶ 4; Allen depo. p. 8-9, 13, 17, 25-26; Lehner decl. ¶ 20-21; Lehner depo. p. 29-30; Falz depo. p. 15-17).

13

While the Lehner's sworn declaration conflicts with his own deposition testimony (as well as with Allen and Falz's testimony) regarding whether employees could read *in the bathroom* during their two *scheduled* breaks, such is not sufficient to create a genuine issue of material fact and defeat summary judgment.[9] Because Plaintiff was not fired for reading at work during a scheduled ten-minute break, he cannot defeat summary judgment by showing that Falz, Lehner, and Allen disagreed about whether reading in the bathroom was allowed during such times.

Next, Plaintiff tries to create a genuine issue of material fact by showing the he understood the no reading at work rule differently, and as such, there is a genuine issue of fact regarding what the rule actually prohibited. Specifically, Plaintiff contends that he understood the rule as allowing reading on breaks, and that he understood "breaks" to include both scheduled breaks and unscheduled comfort breaks to use the bathroom. The flaw in Plaintiff's argument is that it is irrelevant that he did not *intentionally* break the no reading rule and/or that he misunderstood the rule. See Ritchie, 426 Fed. Appx. at 872 (stating that the pretext inquiry focuses on the employer's beliefs, not the employee's beliefs). Lehner caught Plaintiff reading in the bathroom, and Lehner understood the rule as prohibiting reading in the bathroom during unscheduled comfort breaks. An employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." Nix, 738 F.2d at 1187.

---

[9]Lehner states in his declaration that he typed up a memo stating that there was absolutely no reading in the bathroom due to the complaint from the cleaning company. (Lehner decl. ¶ 21). However, he states in his deposition (as does Falz) that employees could read in the bathroom during their *scheduled* breaks. (Lehner depo. p. 30; Falz depo. p. 17).

14

Next, Plaintiff contends that Defendant's reason for firing him is pretextual, because Defendant has proffered a second reason for the firing to this Court—that Plaintiff was insubordinate after he had been caught reading in the bathroom. Plaintiff contends that he was not insubordinate and that he was never told that he was being fired for insubordination, and as such, Defendant's proffered reason of insubordination is not worthy of credence. Given that Plaintiff was never told that he was being fired for being insubordinate, and given that Green did not list insubordination as an additional reason for his termination when filling out forms relating to Plaintiff's unemployment compensation,[10] the Court will not consider insubordination as a proffered legitimate, non-discriminatory reason for Plaintiff's termination. However, that does not change the ultimate result, because Plaintiff has not shown that Defendant's reason for firing him due to his reading in the bathroom was pretextual.

Next, Plaintiff argues that Defendant's reason for firing him is pretextual, because Defendant did not follow its own progressive disciplinary policy. Plaintiff contends that the policy contains four steps—verbal warning, written warning, suspension, and termination—and Defendant did not follow these steps before firing him. However, the flaw in Plaintiff's argument is that Defendant's discipline policy states that "[d]isciplinary action may call for any of the four steps" and that "[t]here may be circumstances when one or more steps is bypassed." (Green decl.: Employee Handbook, p. 35). Since the disciplinary policy afforded discretion as to whether the steps could be skipped, the failure to adhere to the steps is not evidence of pretext. See Ritchie, 426 Fed. Appx. at 873.

---

[10]When filling out the forms, Green listed the reason for Plaintiff's termination as being that he violated a company rule. (Green decl. ¶ 23).

Based on the above, the only evidence to support Plaintiff's argument of pretext is the two comments made by Falz and Lehner—that they were talking to the elderly first, and that the mandatory retirement age in Germany is 65.[11]  However, those two comments, along with Plaintiff's conclusory assertion of age discrimination, are not sufficient to show pretext, because there is no evidence from which a jury could find that Plaintiff was fired due to his age and not due to being caught reading in the bathroom.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

### B. Retaliation

Plaintiff contends that part of the motivation for firing him was the fact that he reported to Green that Falz and Lehner made inappropriate age-related comments to him.  Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claim.

The Eleventh Circuit has explained the standard for evaluating a retaliation claim under the ADEA:

> To establish a prima facie case for retaliation under . . . the ADEA, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there [was] some causal relation between the two events.  If a plaintiff establishes a prima facie case, a defendant may offer a legitimate, nondiscriminatory reason for the employment action as an affirmative defense.

Hawthorne v. Baptist Hospital Inc., 2011 WL 6156827, at *3 (11th Cir. Dec. 12, 2011)(quotation marks and citations omitted).  Thereafter, the plaintiff may offer evidence showing that the defendant's proffered legitimate, non-discriminatory reason is mere pretext for its retaliatory

---

[11] Plaintiff has acknowledged that no other discriminatory comments regarding age were made during his employment.  (Pla. depo. p. 64, 78).

action. See Brown, 311 Fed. Appx. at 224 (citation omitted).

In the instant case, Plaintiff has stated a prima facie claim of retaliation, because he was fired two weeks after he reported the age-related comments to Green. Defendant, however, has proffered a legitimate, non-discriminatory reason for firing Plaintiff—Plaintiff violated the no reading at work rule.

Plaintiff may attempt to show that Defendant's proffered reason for firing him is pretextual through evidence that (1) he did violate the rule, but a younger employee who committed a similar violation was not similarly treated; or (2) he did not violate the cited work rule, and the decision-maker did not, in fact, believe that he violated the work rule. See Hawthorne, 2011 WL 6156827, at *3 (citations omitted). Plaintiff, however, cannot show that Defendant's reason was pretextual. Plaintiff has not identified any other employee that was *caught* violating the no reading at work rule, and thus, he cannot show that a younger employee was treated more favorably.[12] Furthermore, Plaintiff admitted to Lehner that he was, in fact, reading in the bathroom, and as such, Lehner had a basis for believing that Plaintiff violated the no reading rule.

Plaintiff argues that Defendant's reason for firing him is pretextual, because it is obvious that Lehner targeted him for termination. Specifically, Plaintiff argues that because Lehner had never had someone report that he [Lehner] had discriminated against them, Lehner was angry at Plaintiff's report of discrimination and targeted Plaintiff for termination. Further, argues Plaintiff, Lehner merely used the reading incident to manufacture a reason for firing Plaintiff.

---

[12]The fact that other employees may have read in the bathroom is of no consequence if Plaintiff does not also provide evidence that such employees were caught reading.

The Court is not persuaded by this argument and finds that no reasonable jury would be either. As such, because Plaintiff has not shown that there is a genuine issue of fact regarding whether his age discrimination complaint was the true reason that he was fired or that Defendant's legitimate, non-discriminatory reason for firing him is unworthy of credence, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 30) is **GRANTED**.

(2) Defendant's Motion to Strike (Doc. No. 50) is **DENIED AS MOOT**.

(3) The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of January, 2012.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record